[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this action brought by the plaintiff Frances J. Dalia, individually and as administratrix of the estate of Thomas Dalia, against the defendants Julia Lawrence, Carmen Dalia and Paul Dalia, plaintiff seeks a judgment that property presently in the possession of the defendants, consisting of real property located: at 425 Eastern Street, New Haven, Connecticut and the proceeds from three separate bank accounts, are the real property and personal assets of the estate of Thomas Dalia. The plaintiff claims that, as administratrix, she is entitled to immediate possession of the real and personal property, and as the widow of Thomas Dalia, she has a legal interest in the real and personal property pursuant to the statute governing intestate succession, General Statutes (Rev. to 1989) 45-273a.
Upon all of the evidence, the facts herein set forth are found by the court.
On September 1, 1967, the plaintiff and Thomas Dalia were married. At the time of the wedding, Thomas Dalia was the owner in fee simple of real estate known as 425 Eastern Street, New Haven, Connecticut, as described in volume 2354, page 128 of the New Haven land records. After their wedding, Frances and Thomas Dalia took up residence at 425 Eastern Street.
On May 3, 1968, Thomas Dalia executed a quit claim deed conveying the 425 Eastern Street property to his three children by a previous marriage, i.e. the defendants Julia Lawrence, Carmen Dalia and Paul Dalia by his trustee Julia Lawrence. Julia Lawrence was named trustee for Paul Dalia because he was a minor at the time of the conveyance. The deed was duly recorded in the New Haven land records on May 7, 1968 and it was mailed to Julia Lawrence after recordation.
When the defendants became owners of the 425 Eastern Street property by the quit claim deed, they gave license and permission to Thomas Dalia to continue to utilize and occupy the premises for the duration of his lifetime as though he were still the fee owner. Although the real estate insurance policy issued by the Macosky Agency to cover the 425 Eastern Street property listed the CT Page 9826 three defendants as the only owners of the premises, from May 3, 1968 to the date of his death on November 21, 1989, Thomas Dalia paid all bills and costs for the maintenance of the property, including taxes, sewer, water, insurance, repairs and mortgage payments. During that same period Thomas Dalia collected all the rental income generated by the property entered into leases with tenants, and responded to the complaints and needs of the tenants. Thomas Dalia reported all income received from the 425 Eastern Street property on his and Frances Dalia's joint tax returns, took the depreciation and deducted for the costs thereon. Thomas Dalia declared himself to be the owner of the property to his accountant, his neighbors and to the municipal authorities.
Thomas Dalia opened a trust bank account, No. 777-7643, with the Second New Haven Bank, now Bank of Boston, in the name of Thomas Dalia as trustee for Carmen Dalia. Thomas Dalia was the sole signatory to the account and the account was listed under his social security number. Thereafter, Thomas Dalia at various times deposited and withdrew funds from this account and continued to exercise complete control over the account and its funds.
Thomas Dalia opened a trust bank account, No. 839-3269, with the Colonial Bank, now Bank of Boston, in the name of Thomas Dalia as trustee for Julia Lawrence. Thomas Dalia was the sole signatory to the account and the account was listed under his social security number. Thereafter, Thomas Dalia at various times deposited and withdrew funds from this account and continued to exercise complete control over the account and its funds.
The rules of the now Bank of Boston provided that only Thomas Dalia would be allowed access to the two trustee accounts while he was alive, and that upon his death the funds in the accounts would be payable to the named beneficiaries. The bank books were kept either in Thomas Dalia's house or in a safety deposit box that was located at the now Bank of Boston. Prior to the time he was in extremis, Thomas Dalia was the only person who entered into the safety deposit box.
Also during his lifetime, Thomas Dalia opened a joint survivorship bank account, No. 777-5256, with the now Bank of Boston, in the name of Thomas Dalia and Paul Dalia, and listed under the social security number of Thomas Dalia. Thereafter, Thomas Dalia at various times deposited and withdrew funds from this account and continued to exercise complete control over the account and its funds until he gave to Paul Dalia on November 13, 1989, the key to the safety deposit box and the passbook for said joint survivorship bank account.
The rules of the now Bank of Boston provided that either Thomas Dalia or Paul Dalia would be allowed access to the joint CT Page 9827 survivorship account while both were alive. The passbook was kept in either Thomas Dalia's house or the aforementioned safety deposit box located at the bank.
On November 13, 1989, as he was dying, Thomas Dalia gave Paul Dalia the keys to the safety deposit box and told Paul Dalia to close out the joint survivorship account and take the funds, which amounted to $17,179.63, to buy a truck for himself, but to withhold enough funds to pay for Thomas Dalia's burial; also Thomas Dalia told Paul Dalia to hold the passbooks for the trust accounts for Julia Lawrence and Carmen Dalia. On November 21, 1989, Thomas Dalia died intestate. Upon his death the Bank of Boston paid out the funds in the respective trustee accounts, in the amounts of $17,219.19 to Carmen Dalia and $14,276.57 to Julia Lawrence, on November 29, 1989 and November 28, 1989, respectively. The three defendants filed a succession tax return in which they fully admitted that the value of the real property at 425 Eastern Street and the funds from the bank accounts were entirely taxable to them, and the state department of revenue resources assessed the defendants accordingly.
The plaintiff alleges that the quit claim of the real property located at 425 Eastern Street was not a valid gift inter vivos because Thomas Dalia lacked the requisite intent to immediately and irrevocably pass title to the three defendants. The plaintiff argues that this lack of intent is evidence by the fact that Thomas Dalia maintained physical possession of and control over the subject property during his lifetime.
When the estate is a party to the controversy, the burden is on the persons claiming the gift to prove their claim by "clear and satisfactory" proof, in the absence of another standard fixed. by statute. Long v. Schull, 184 Conn. 252, 255; Kukanskis v. Jasut, 169 Conn. 29, 32; Kriedel v. Krampitz, 137 Conn. 532, 534. "`A gift is the transfer of property without consideration.' Guinan's Appeal, 70 Conn. 342, 347." Kriedel v. Krampitz. Id. To constitute a valid gift inter vivos, there must be a valid delivery of possession accompanied by the intent of the donor that title shall pass immediately and irrevocably. Bergen v. Bergen,177 Conn. 53, 56-57; Kriedel v. Krampitz, supra, 534. "A gift inter vivos is complete when there is the intention to give, accompanied by a delivery of the thing given, and an acceptance by the donee. . . . It is not necessary that there should be a manual delivery of the thing given; nor is there any particular form or mode in which the transfer must be made or by which the intention of the donor must be expressed." Hebrew University Association v. Nye, 26 Conn. Sup. 342, 344. "Delivery is a matter of intention, proved by act or word." Wiley v. London Lancashire Fire Insurance Co., 89 Conn. 35, 39. "Delivery must be made with the intent to pass title if it is to be effective." Sweeney v. CT Page 9828 Sweeney, 126 Conn. 391, 394; see also Lomatira v. Lomatira,159 Conn. 558, 561.
It is a well established policy of Connecticut law that all interests in land must be recorded in the land records. Hawley v. McCabe 117 Conn. 558, 564. Ricci v. Naples, 108 Conn. 19, 24; Goldberg v. Parker, 87 Conn. 99, 108; Beach v. Osborne, 74 Conn. 405,411, 412. General Statutes 47-10 provides in pertinent part, that "[n]o conveyance shall be effectual to hold any land against any other person . . . unless recorded on the records of the town in which the land lies. . . ." On May 7, 1968, in accordance with the applicable statute and established legal policy, Thomas Dalia recorded the quit claim deed at issue in the New Haven land records and the deed was mailed to Julia Lawrence after recordation.
Recording of a deed with the intent to pass title to a grantee constitutes a legal delivery. Moore v. Giles, 49 Conn. 570,573. Nevertheless, the mere fact of recordation is not conclusive of delivery. "The legal effect of that act depends upon intent with which [the grantor] performed it, and that is a question of fact." Id.
Thomas Dalia told his children that it was his intention that the children have said real property and the money in the bank accounts, in accordance with his promise to their mother.
Upon all the evidence the court finds that the defendants have proven by clear and convincing proof that Thomas Dalia intended to pass title to the real property immediately and irrevocably to the defendants, and that his recording of the quitclaim deed coupled with this intent to pass title constituted an immediate, legal delivery to the defendants.
This finding is not contravened by the fact that Thomas Dalia, with the assent of the defendants, maintained control of the property during his lifetime, Moore v. Giles, supra, 570-573.
"While the change of possession may be either actual or constructive, it must be such as is consistent with the nature of the property and the situation on the parties." Hebrew University Association v. Nye, supra, 344. In the present case it was entirely consistent with the nature of the property and the situation of the parties, for Thomas Dalia to maintain and control, with the assent of the defendants as the absentee owners, the residential rental property in which he and his wife still resided, for the benefit of the defendants.
The plaintiff alleges, that Thomas Dalia did not intend to pass title to the two trust bank accounts, either at the time they CT Page 9829 were created or thereafter during his lifetime, but rather that he intended that the funds should pass to the defendants Carmen Dalia and Julia Lawrence only upon his death. The plaintiff contends that such trust accounts are tentative trusts only, and that they are revocable at will until the depositor dies or until the depositor completes the gift by some unequivocal act or declaration during his lifetime. See United States v. State National Bank of Connecticut, 421 F.2d 519, 520 (2d Cir. 1970). The plaintiff argues that because Thomas Dalia did not complete the gift during his lifetime, the funds became part of his estate at the moment of his death.
These claims cannot be sustained when the operative provisions of the governing statute, General Statutes 36-110, as interpreted by the State Supreme Court in Manulik v. Devitt,176 Conn. 663, are applied to the facts of this case. Section 36-110 expressly permits the creation of a savings account trust that gives the depositor-trustee title and a lifetime right to the use of funds, with title on his death immediately vesting in the designated beneficiary. General Statutes 36-110(1), Manulik v. Devitt, supra, 667. Section 36-110 was enacted to give full effect to a savings account trust deposit despite any noncompliance with the requirements of the Statute of Wills or of any common law requirements of gifts or transfer in trust. Manulik v. Devitt, supra, 667.
Unless the depositor-trustee's signed statement, which as a statutory requisite must accompany the deposit in trust at its; creation, specifies to the contrary, section 36-110(1) creates the conclusive presumption that the depositor intends to create a trust of the funds in the account in accordance with three specific terms. First, the depositor retains title to the funds and retains a lifetime right to their use: "[t]he depositor during his life may withdraw, or authorize charges against, the moneys to the credit of the trust;. . . ." General Statutes 36-110(1)(a) Manulik v. Devitt, supra, 667. Second, ". . . if the depositor survives the named beneficiary, the named beneficiary's death shall terminate the trust and the title to the moneys . . . shall vest in the depositor free and clear of the trust; . . . ." General Statutes 36-110(1)(a); Manulik v. Devitt, supra, 667. Third, title to the funds vests immediately in the beneficiary upon the death of the depositor-trustee: ". . . if the named beneficiary survives the depositor, the depositor's death shall terminate the trust and the moneys . . . shall vest in the named beneficiary free and clear of the trust." (Emphasis added). General Statutes 36-110(1)(a); Manulik v. Devitt, supra. 667. The beneficiary thus obtains a beneficial interest in the funds on deposit. "[W]e read 36-110 to mean that the beneficiary of an unqualified savings account trust acquires no legal interest in the funds on deposit until the death of the depositor." Salvio v. CT Page 9830 Salvio, 186 Conn. 311, 322-323.
By the express terms of the statute, this conclusive presumption cannot be defeated or otherwise affected because the depositor's signed statement failed to comply either with the Statute of Wills "or because of any absence of delivery or compliance with the requirements to effect a valid gift or transfer in trust." (Emphasis added). General Statutes 36-110(1)(b); Manulik v. Devitt, supra, 667. The Manulik court further declared that:
 It is unmistakable that [36-110] was based upon the premise that the creation and maintenance of such an account itself manifested the depositor-trustee's intent and that this conclusively presumed intent should be accorded full effect through the instrumentality of a, "statutory trust" in spite of the fact that the transaction fails to satisfy the requirements of the Statute of Wills or of the common law concepts of gifts or transfer in trust.
(Emphasis added) Manulik v. Devitt, supra, 668. See also Salvio v. Salvio, supra, 323 ("we conclude . . . that the statutory presumption replaces any test of intent [on the part of the depositor to create a beneficial interest in the beneficiary prior to the depositor's death]"). "In sum, 36-110 gives effect to the intention of the depositor to make a `poor man's will', but at the same time to retain the sole right to the moneys during his lifetime." Manulik v. Devitt, supra, 668. See also Salvio v. Salvio, supra, 322-23.
The plaintiff relies upon dicta in Salvio v. Salvio, supra, as authority to support her contention that because Thomas Dalia exercised complete power over the funds in the trust accounts during his lifetime, the creation of the accounts amounted to a testamentary disposition, and that therefore, those funds should be included in the estate of Thomas Dalia for the purposes of computing her statutory intestate share:
 "Although there is no such consensus on the right of a spouse to reach funds deposited in savings account trusts when computing an elective share of the depositor's estate, the prevailing view is that, since the decedent spouse exercised such complete power over the funds during his lifetime, the surviving spouse should be permitted to include them."
Id., 320-321. CT Page 9831
The plaintiff's reliance upon Salvio is misplaced. Salvio is factually distinguishable from the present case and is not controlling. Salvio involved a dissolution action; the depositor trustee was alive at the time the estate was being computed and divided. The beneficiaries therefore, could have no interest in the trust accounts. General Statutes 36-110(1)(a); Manulik v. Devitt, supra, 667-68. In the present case, however, the depositor-trustee Thomas Dalia is deceased. At the moment that Thomas Dalia died, all right and title to the funds passed to the defendant-beneficiaries Carmen Dalia and Julia Lawrence by operation of the pertinent provisions of General Statutes 36-220. See General Statutes 36-110(1)(a), (b); Manulik v. Devitt, supra, 667-68.
Further, while the Supreme Court in Salvio noted that in some jurisdictions statutes authorize the inclusion of saving account trusts in the estate of a decedent spouse, it also stated "[t]hat issue has not yet been squarely addressed in Connecticut." Salvio v. Salvio, supra, 321 n. 8.
 ". . . it is clear that `neither husband nor wife acquires, by virtue of the marriage, any interest in the real or personal property of the other during that other's lifetime', and `either spouse may, in his lifetime, without the consent or knowledge of the other make a valid gift or otherwise dispose of his property, to a third party."
Id. See also General Statutes 46b-36.
There is no statute or case law in this state which requires the inclusion of the trust account funds in the estate of Thomas Dalia. To do so would be contrary to the stated intent and purpose of General Statutes 36-110. See Manulik v. Devitt, supra, 667-669; Salvio v. Salvio, supra, 321-324.
The court finds that Thomas Dalia's signed statement as depositor-trustee specified nothing that would nullify the conclusive presumption created by General Statutes 36-110; the plaintiff has failed either to allege or prove fraud, duress, undue influence or mistake in the creation of the trust accounts; see Manulik v. Devitt, supra, 668-69; and there is no express statutory provision or clear judicial authority in this state which requires the inclusion of the trust account funds in the estate of Thomas Dalia. Accordingly, the court finds that the defendants Carmen Dalia and Julia Lawrence, as the designated beneficiaries, acquired all rights and title to the trust account funds immediately upon the death of Thomas Dalia, and that these funds are not assets of his estate in which the plaintiff can CT Page 9832 claim a legal interest.
Next, the plaintiff alleges, that Thomas Dalia did not intend to pass title to the joint survivorship bank account, either at the time it was created or thereafter during his lifetime, but rather that he intended that the funds should pass to the defendant Paul Dalia only upon Thomas Dalia's death. The plaintiff contends that this lack of donative intent is evidenced by the fact that Thomas Dalia retained physical possession of the joint account passbook until he was on his deathbed. She further argues that the joint survivorship account therefore fails as a valid gift inter vivos, and at best constituted a gift causa mortis and an attempted testamentary disposition that should be included in the estate of Thomas Dalia for the purpose of computing her statutory intestate share.
The plaintiff's claim with regard to the joint survivorship account fails, as did her claims relating to the real property and the two trust savings accounts. Her claim to the joint survivorship account is defeated by operation of the governing statute, General Statutes 36-3, as applied in accordance with the controlling case law and the fact that Thomas Dalia delivered the passbook to Paul Dalia with authority to use the money in the account. General Statutes 36-3 establishes a legislative rule of evidence that generates a presumption and shifts the ordinary burden of proof. Cooper v. Cavallaro, 2 Conn. App. 622, 625-627. "The intent of the legislature in enacting General Statutes 36-3 was to make the existence of a joint bank account prima facie evidence of ownership by the survivor which can only be rebutted by clear and convincing evidence to the contrary." (Emphasis added). Cooper v. Cavallaro, supra, 626. See also Devitt v. Manulik, 176 Conn. 657, 551. The presumption is intended to apply in cases such as the one now before the court, i.e., where the depositor-trustee has died and there is a dispute as to ownership of the funds: "The presumption created by [General Statutes 36-3 (1)] has no application to an action between the parties when all of them are alive." Monachelli v. Mechanics Farmers Savings Bank, 13 Conn. App. 663, 665.
The plaintiff in the present case bears the burden of proving her allegations by clear and convincing evidence. A joint bank account "shall, in the absence of fraud or undue influence, or other clear and convincing evidence, be prima facie evidence . . . of the named owners thereof to vest title to such . . . account . . . in [the] survivor. . . ." General Statutes 36-3 (1); Cooper v. Cavallaro, supra, 626.
Since the plaintiff does not allege a fiduciary relationship nor any undue influence or fraud, the burden of proof does not shift to the defendant but remains with the plaintiff. Alaimo v. CT Page 9833 Royer, 188 Conn. 36, 40, 41. The plaintiff is required to prove by clear and convincing evidence that the joint survivorship account was not a valid gift inter vivos; General Statutes 36-3; see Cooper v. Cavallaro, supra, 626; or that it was an asset acquired by the defendants under circumstances that would require the court in equity to divest him of his beneficial interest and to convert him into a constructive trustee in order to prevent his unjust enrichment. Cooper v. Cavallaro, supra, 626; Cohen v. Cohen, 186 Conn. 193, 202; Hieble v. Hieble, 164 Conn. 56, 61-63.
The court finds that the plaintiff has failed to rebut the statutory presumption that Thomas Dalia intended to pass a present beneficial ownership interest in the joint account to the defendant Paul Dalia at the time Thomas Dalia created that account.
Finally, based upon all the evidence and testimony presented to the court, the court finds that the plaintiff has failed to prove by a fair preponderance of the evidence that a constructive trust should be imposed upon any or all of the defendants.
 "A constructive trust arises `"contrary to intention and in invitum, against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct. artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy."' Zack v. Guzauskas, 171 Conn. 98, 103, `"A constructive trust arises whenever another's property has been wrongfully appropriated and converted into a different form."' Van Auken v. Tyrrell, 130 Conn. 289, 292. . . . It also arises when a person `" who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it."' Brown v. Brown, 190 Conn. 345, 349. . . ." Spatola v. Spatola, 4 Conn. App. 79, 81. The plaintiff has failed to prove that the defendants have wrongfully appropriated the subject property or that they would be unjustly enriched if permitted to retain it.
Accordingly, judgment is hereby rendered for the defendants on each count. CT Page 9834
Ronald J. Fracasse, Judge