In re Joseph M. AULICINO, Jr. and Jean J. Aulicino, Debtors.

Bankruptcy No. 5–84–00160.

United States Bankruptcy Court, D. Connecticut.

April 12, 1985.

Matthew B. Woods, Gladstone, Schwartz, Baroff & Blum, Bridgeport, Conn., for debtors.

William J. Kupinse, Jr., Goldstein and Peck, P.C., Bridgeport, Conn., for Citytrust.

## MEMORANDUM AND DECISION ON OBJECTION TO CLAIM

ALAN H.W. SHIFF, Bankruptcy Judge.

On August 27, 1984, Citytrust, as executor of the estate of Mary Horin (decedent), filed a proof of claim in the amount of $79,949.01[1] plus statutory treble damages.[2] The debtors object to the claim in its entirety, asserting that the debtors "used their position of trust and confidence to convert the decedent's funds."[3]

In July 1975, the debtors purchased a residence in Bridgeport, Connecticut next door to the decedent. At that time, the decedent was sixty-five years old and lived with her sister and brother, both of whom have since predeceased her. The decedent's only other relative was a niece.

---

1.  Citytrust's Exhibit K is a copy of the proof of claim, filed on August 27, 1984, well before the expiration of time to file claims, which in this case was ninety days after July 9, 1984. *See* Bankruptcy Rule 3002. Although the Citytrust's proof of claim was in an amount of $79,949.01, Citytrust's Exhibits E–J, being all exhibits relating to the amount of funds allegedly converted by the debtors, total $75,949.01. *Note also*, Citytrust's exhibits were designated as "Defendant's Exhibits" throughout this proceeding.

2.  The treble damage claim was made pursuant to Conn.Gen.Stat. § 52–564.

3.  Claimant's Trial Memorandum, p. 5.

254

The debtors' relationship with the decedent was initially superficial, but within a short time, she began to depend upon Joseph Aulicino, Jr. ("Aulicino") to perform certain physical tasks, such as fixing things in her home and shoveling snow. As time passed, the decedent's reliance upon both debtors for a widening range of activities and services increased. Toward the end of 1979, the decedent's health had deteriorated significantly and by that time both debtors were rendering daily assistance to her. In December 1979, the decedent suffered a heart attack. Aulicino made arrangements for her to go to the hospital, he accompanied her there, and he remained overnight to be sure proper arrangements were made for her comfort. That level of care and concern was demonstrated repeatedly by both debtors until the decedent's death in June 1980.

On April 17, 1980, the decedent executed a power of attorney in favor of the debtors, and from that date, one or the other of the debtors drew checks upon the decedent's account, which total all but $8,650.00 of Citytrust's claim.[4] The debtors have admitted that the checks they drew as attorneys in fact in the amount of $67,299.01 were almost entirely for their personal benefit.[5] They insisted, however, that the decedent authorized them to draw those checks as gifts from her to them.

■ As this court noted in *In re Central Rubber Products, Inc.*, 31 B.R. 865 (Bankr.D.Conn.1983).

A properly filed proof of claim "constitute[s] prima facie evidence of the validity and amount of the claim." Bankruptcy Rule 301(b); *In re Borne Chemical Co., Inc.*, 16 B.R. 509 (Bkrtcy.D.N.J. 1980); *In re Georg Jensen, Inc.*, 1 B.R. 239, 244 (Bkrtcy.S.D.N.Y.1979). Conse-

quently, a debtor or trustee who objects to a proof of claim has the burden of going forward with evidence in rebuttal. *In re Avien, Inc.*, 390 F.Supp. 1335, 1342 (E.D.N.Y.1975). The ultimate burden of persuasion, however, is upon the creditor, *In re Georg Jensen, supra*, and in that regard, the creditor must prove his claim by a fair preponderance of the evidence. *Rasmussen v. Gresly*, 77 F.2d 252 (8th Cir.1935); *In re Palm Investments of Pinellas County, Inc.*, 2 B.R. 646, 649 (Bkrtcy.M.D.Fla.1980).

31 B.R. at 867.

■ Here, as noted, Citytrust properly filed a proof of claim and argues that the debtors, as fiduciaries, "used their position of trust and confidence to convert the decedent's funds".[6] The burden then shifted to the objecting debtors to offer evidence sufficient to overcome the prima facie validity of Citytrust's claim. Specifically, the debtors had the burden of going forward with evidence to dispute the validity of Citytrust's claim, which rests upon an alleged breach of a confidential or fiduciary relationship.[7] It was incumbent upon the debtors to prove by clear and convincing evidence fair dealing or absence of undue influence on their part. *Alaimo v. Roger*, 188 Conn. 36, 448 A.2d 207 (1982); *Cooper v. Cavallaro*, 2 Conn.App. 622, 481 A.2d 101 (1984).

■ I find that the debtors have met their burden of going forward by offering evidence which by clear and convincing evidence disputes the validity of Citytrust's claim. The evidence offered by the debtors demonstrated the decedent's strong feelings of affection for and dependence upon the debtors. Both debtors gave persuasive testimony in that regard with numerous

**4.** The decedent drew $8,650.00 from her account on and before the date she executed her power of attorney. Copies of the checks in evidence were of poor quality, but it appears that most, if not all, were drawn in favor of the debtor Joseph Aulicino, Jr.

**5.** Undisputed testimony showed that the fourteenth check, Exhibit I6, was payable to Beck & Quint and was used to purchase a television set

for the decedent while she was at a nursing home.

**6.** See note 3, *supra*.

**7.** A power of attorney creates a fiduciary relationship. *Harper v. Adametz*, 142 Conn. 218, 113 A.2d 136 (1955).

detailed examples of the decedent's expressions of gratitude. Moreover, it is clear from the testimony of Attorney James Stewart, who prepared the power of attorney at the decedent's request, that the decedent trusted the debtors and wanted to rely upon them rather than her former attorney-in-fact. It is also clear from the evidence, including Attorney Stewart's corroborating testimony, that the decedent, having depended upon the debtors to help her during the period of her progressive disability and having benefited from their help and companionship, expressed her gratitude by authorizing them to issue checks from her funds for their benefit.

Having offered a credible explanation for their use of the power of attorney to transfer the decedent's funds for their benefit, the burden of going forward shifted back to Citytrust, which has the ultimate burden of persuasion.

It is apparent from the evidence that the basis for Citytrust's claim is the suspicion of its officer Marc Vincent that the debtors may have exercised undue influence over the decedent. It further appears, however, that Vincent did not have any idea as to the decedent's intent insofar as the use of her funds were concerned.

There is no credible and convincing evidence for me to conclude that the debtors were not honestly motivated. While the state of our civilization has apparently not achieved a plateau where neighbors commonly care for and attend to each other, neither have we descended to the level where such conduct can only be explained by ulterior motives. Citytrust's suspicion of undue influence and breach of fiduciary responsibility hardly raises to the level of proof necessary to sustain its claim against the debtors' estate.

## CONCLUSION

For the reasons herein stated, the debtors' objection to Citytrust's claim is sustained and an order may enter accordingly.